**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| United States of America,        ) | No. CIV-07-2184-PHX-RCB |
|                                  ) |  |
|         Petitioner,              ) | **ORDER** |
|                                  ) |  |
| vs.                              ) |  |
|                                  ) |  |
|                                  ) |  |
| William R. Fitzpatrick, Jr.,     ) |  |
|                                  ) |  |
|         Respondent.              ) |  |
|                                  ) |  |
| _____ ) |  |

Currently pending before the court is a motion by petitioner, the United States of America, seeking compensatory sanctions against respondent, William R. Fitzpatrick, Jr. (doc. 48). This motion arises out of an ongoing investigation by the Internal Revenue Service ("IRS") as to "whether there was fraud, malfeasance or misrepresentations of material fact [as] to the closing agreement . . . entered into between the IRS and [respondent] regarding his tax liability for 2001." Decl'n of [IRS] Revenue Agent Elizabeth A. Marriaga (doc. 50) at 1-2, ¶ 2.

The United States is seeking sanctions totaling $9,058.52 –

1  $7,392.83 in attorney's fees and $1,665.69 in costs.  Respondent
2  argues that the court should deny this motion in its entirety.
3  Alternatively, he argues that the court should deny this motion
4  insofar as the United States is seeking attorney's fees, but grant
5  it as to costs.  <u>See</u> Resp. (doc. 52) at 6.  For the reasons set
6  forth below, the court grants the United States' motion for
7  sanctions, but not in the requested amount.

### ***Background***

9       The court assumes familiarity with the fairly prolonged
10 history of this IRS enforcement action.  When respondent did not
11 fully comply with this court's enforcement order, the United States
12 filed a motion for contempt.  Following an evidentiary hearing this
13 court found respondent in contempt.  <u>United States v. Fitzpatrick</u>,
14 2008 WL 853055, at *9 (D.Ariz. Feb. 4, 2008).  A fairly detailed
15 review of <u>Fitzpatrick</u> will help place the present motion in context
16 however.

17      In <u>Fitzpatrick</u>, the court engaged in the "three-step analysis"
18 which governs civil contempt proceedings based upon a witness'
19 asserted memory loss.  <u>See</u> <u>id.</u> at *7 - *8.  Although the
20 "respondent did not have sudden recall during the hearing" as to
21 how he calculated the $3,855,987.00 gross sales price for the
22 "CARDS" transaction at issue, the court found respondent's
23 testimony on that point "troubling" in two respects.  <u>Id.</u> at *8.
24 First, "in response to questioning by his own counsel and then in
25 response to a direct inquiry from the court," respondent indicated
26 that "given enough time and documentation, he 'might be able' to
27 reconstruct how he arrived at th[at] . . . gross sales price."  <u>Id.</u>
28 (citations omitted).  The court found "[e]qually troubling . . .

-2-

the fact that evidently at no time since the IRS served the summons on March 27, 2006, [did] respondent ma[k]e any effort to determine how he calculated that sales price." Id.

Ultimately the court found that plaintiff did not, "as he was required to do, [take] all reasonable steps in his power to comply with the IRS' request as to how he calculated the gross sales prices." Id. (internal quotation marks and citation omitted). Based upon his "overall demeanor during the [contempt] hearing, including his ability to fairly vividly recall far less consequential matters," the court was "persuade[d]" that respondent's "claimed inability to remember how he calculated the gross sale price . . . [wa]s not entirely credible." Id. The court thus concluded that respondent did not "answer[] to the best of his ability the IRS' inquiry as to th[at] calculation." Id.

Respondent's claimed memory loss "r[a]ng[] hollow[]" to the court for an additional reason. Respondent testified "that as a certified public accountant he has [a] 'pretty good clue' as to what is necessary in preparing tax returns, and that he likes to think that he is 'pretty knowledgeable' in terms of tax law and tax reporting requirements." Id. (citations omitted). The court was somewhat incredulous that "[d]espite the fact that relatively speaking respondent is a fairly sophisticated tax payer and preparer of tax returns, conveniently he now does not remember[] how he calculated what is undisputably a significant entry in connection with his 2001 tax return." Id. For these reasons, the court found "respondent in contempt for failure to respond to the IRS' inquiry as to how he calculated the $3,855,978.00 gross sales price on" the CARDS transaction. Id.

1    In considering how to insure respondent's compliance with the
2 IRS summons and enforcement order, the court rejected outright the
3 United States' argument for coercive incarceration.  See id. at *9.
4 The court also found that compensatory sanctions were not "proper
5 . . . because, *inter alia*, there [wa]s no proof of actual losses
6 sustained as a result of the contumacy, . . . ; and the IRS did not
7 suggest . . . that it had any such proof."  Id. (internal quotation
8 marks, citations and emphasis omitted).  The court did leave open
9 the possibility of contempt sanctions at a later date, however, by
10 adding that "[e]ven if the IRS had made such a suggestion, . . . ,
11 given the circumscribed nature of [its] contempt finding, it would
12 not order compensatory sanctions *at this juncture*."  Id. (emphasis
13 added).  Although it declined to monetarily sanction respondent for
14 his contempt, the court did order him to explain to the IRS how he
15 calculated the gross sales price, setting forth a time frame for
16 such compliance.  The court expressly retained jurisdiction "for
17 the purpose of ensuring that respondent has fully complied with
18 th[at] order, as well as the underlying enforcement order . . . and
19 the underlying summons[.]"  Id. at *10.

20    Complying with that contempt order, on March 3, 2008,
21 respondent provided a declaration to the IRS explaining how he
22 calculated the gross sales price.  See Mot. (doc. 48) at 2, ¶ 5;
23 see also Marriaga Decl'n (doc. 50) at 2, ¶ 3.  Several days later,
24 in an interview with an IRS agent and IRS Chief Counsel Attorney,
25 respondent answered questions as to his calculations and that
26 declaration.  Id.; see also Marriaga Decl'n (doc. 50) at 2, ¶ 4.
27 Despite being served with the IRS summons on March 27, 2006, it was
28 not until nearly two years later that respondent, for "the first

1  time[,] . . . provided the IRS with an explanation [as to] how he
2  calculated the gross sales price he entered into line 10(d) of his
3  2001 [IRS] Form 4797." Id. at ¶ 6; see also Marriaga Decl'n(doc.
4  50) at 2, ¶ 5.

5  Based upon this sequence of events, the United States contends
6  that the contempt hearing was "necessary to make respondent comply"
7  with the court's enforcement order. Memo. (doc. 51) at 3.
8  Further, the United States contends that "[a]s a result of these
9  contempt proceedings, [it] [has] incurred $9,058.52 in attorney's
10 fees and costs." Mot. (doc. 48) at ¶ 7. Basically, it is
11 respondent's position that the United States made "no effort . . .
12 to reduce, if not eliminate the claimed compensatory sanctions[.]"
13 Resp. (doc. 52) at 5, ¶ 3. Respondent strongly implies that no
14 contempt hearing would have been necessary if the United States had
15 made "any real effort . . . to resolve the issues between the
16 parties." Id. Therefore, in the exercise of its discretion, the
17 court should decline to award sanctions at all; but if it is
18 inclined to make such an award, it should be limited to the United
19 States' costs.

### *Discussion*

21 "Sanctions for civil contempt may be imposed to coerce
22 obedience to a court order, or to compensate the party pursuing the
23 contempt action for injuries resulting from the contemptuous
24 behavior, or both." General Signal Corp. v. Donallco, Inc., 787
25 F.2d 1376, 1379 (9th Cir. 1986) (citations omitted). Here, the
26 United States is proceeding under the second theory; it is seeking
27 compensation for "actual losses *sustained as a result of the*
28 *contumacy*." Id. (internal quotation marks and citation omitted)

(emphasis added by Ninth Circuit). Those "actual losses" consist of the United States' attorney's fees and costs incurred as a result of the contempt proceeding.

As noted earlier, the parties disagree as to the propriety of awarding sanctions in the first place. The court agrees with the United States, however, that the contempt hearing was "necessary to make respondent comply" with the enforcement order. Memo. (doc. 51) at 3. As alluded to above, and fully set forth in Fitzpatrick, respondent has a prolonged history of recalcitrance in terms of complying with the IRS summons served upon him on March 27, 2006. Perhaps most telling is that after the contempt finding, respondent explained how he calculated the gross sales price on the CARDS transaction, even though he had previously claimed that he did not recall how he performed that calculation. Cf. United States v. Blaine, 2006 WL 2864894, at *2 (D.Hawai'i May 5, 2006) (attorney's fees and costs "justified" for civil contempt where "[r]espondents did not begin to comply with" IRS enforcement order "until after [the United States] Filed a Motion for contempt[]"), adopted in part, modified on other grounds, 2006 WL 2864890 (D.Hawai'i Aug. 21, 2006). This conduct confirms the court's conclusion that respondent was not entirely forthcoming during the contempt hearing. Indeed, evidently that contempt finding greatly contributed to respondent's subsequent ability to recall how he calculated the gross sales price.

Significantly, it is long established that "'[t]he absence of wilfulness does not relieve [one] from civil contempt.'" Donovan v. Burlington Northern, Inc., 781 F.2d 680, 684 (9th Cir. 1986) (quoting McComb v. Jacksonville Paper Co., 336 U.S. 187, 191, 69

S.Ct. 497, 499, 93 L.Ed. 599 (1949)).  Moreover, "civil contempt need not be willful to justify a discretionary award of fees and expenses."  Id. (internal quotation marks and citation omitted).  This is so because in contrast to criminal contempt, the purpose of civil contempt is remedial.  See Perry v. O'Donnell, 759 F.2d 702, 705 (9th Cir. 1985) (citing Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 779, 778 (9th Cir. 1983) (one purpose of civil contempt is "to compensate the contemnor's adversary for the injuries which result from the noncompliance")).  So, while respondent Fitzpatrick may not have willingly delayed his compliance with the IRS summons, that does not preclude an award of attorney's fees and costs in this case.  Thus, considering all of the circumstances, in the exercise of its discretion, the court finds that an award of attorney's fees and costs is appropriate here.  See Harcourt Brace v. Multistate Legal Studies, 26 F.3d 948, 953 (9th Cir. 1994) (citation omitted) ("An award of attorney's fees for civil contempt is within the discretion of the district court.")  Having found that respondent's conduct is sanctionable, the next issue is the amount of those sanctions.

### *I.  Attorney's Fees*

In evaluating a motion for an attorney's fee award for civil contempt, the Ninth Circuit has "suggested" that courts "should . . . consider" twelve factors, known as the Kerr factors based upon the case of the same name.  See Donallco, 787 F.2d at 1380 (citing Kerr v. Screen Extras Guild, 526 F.2d 67, 70 (9th Cir. 1975)).  Those factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal services properly,

-7-

>                    (4) the preclusion of other employment by the attorney
>                    due to acceptance of the case, (5) the customary fee,
>                    (6) whether the fee is fixed or contingent, (7) time
>                    limitations imposed by the client or the circumstances,
>                    (8) the amount involved and the results obtained, (9)
>                    the experience, reputation, and ability of the attorneys,
>                    (10) the 'undesirability' of the case, (11) the nature
>                    and length of the professional relationship with the
>                    client, and (12) awards in similar cases.

Kerr, 526 F.2d at 70. Failure to conduct an "inquiry into the appropriateness of the fees requested in light of the Kerr factors" is grounds for remand. Donallco, 787 F.2d at 1381 (citation omitted).

   Goud P. Maragani, a trial attorney with the Tax Division of the United States Department of Justice ("DOJ"), expended 9 hours preparing the contempt motion, and an additional 34.5 hours preparing for and attending the evidentiary hearing. Maragani Decl'n (doc. 49) at 2, ¶ 4(a). These hours do not reflect time expended by DOJ supervisors and IRS personnel who also worked on this matter. Id. Considering the pertinent Kerr factors, the court finds that the requested fee award is both warranted and reasonable, although, as fully explained below, the court will make a slight adjustment in the hourly rate sought.

   If the court decides, as it has, to award attorney's fees, respondent challenges only the hourly rate. The United States generally asserts that "[a] reasonable hourly rate" is the "prevailing market rate[] in the relevant community." Id. (internal quotation marks and citations omitted). Rather than incurring the expense of experts to testify as to what that rate is, however, the United States is requesting an hourly rate calculated in accordance with the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 412(d)(2)(A). See id. (citations omitted);

see also Reply (doc. 54) at 3.  More specifically, the United States is seeking the EAJA hourly rate of $125 adjusted for inflation, which by its calculation is $169.95.  Id. at 3, ¶ 4(a).  Employing that hourly rate, and based upon a total of 43.5 hours of legal services provided in connection with this contempt matter, the United States seeks a total of $7,392.83 in attorney's fees.

That amount "appear[s] to be overstated[]" according to the respondent because in his view fees should be "based upon the government attorney's pay grade."  Resp. (doc. 52) at 6:3-8 (citations omitted).  Thus respondent urges this court to order the United States to recalculate the amount sought in accordance with Mr. Maragani's pay grade.  Id.

In making this argument, respondent relies upon a 1981 Rhode Island District Court case, United States v. Tivian Laboratories, Inc., 1981 WL 1774 (D.R.I. Jan. 28, 1981).  With no analysis, the Tivian court required government attorneys to file affidavits "detail[ing] the number of hours expended and the *grade level* at which such hours were worked."  Id. at *3 (citing United States v. Greyhound Corp., 370 F.Supp. 881 (N.D.Ill. 1974)) (emphasis added).  The Greyhound court similarly offered no legal analysis for requiring affidavits including government attorneys' "grade level" before awarding fees for contempt.  See Greyhound, 370 F.Supp. at 886.

The court declines to adopt this "grade level" approach for determining the hourly rate for the government attorney in this case.  The court reaches this conclusion based upon the thorough and persuasive analysis in Harris v. Marsh, 123 F.R.D. 204, 226-228 (E.D.No. Cal. 1988), rev'd in part on other grounds, 914 F.2d 525

1 (4th Cir. 1990).  The court agrees with <u>Harris</u> that the "'salary
2 only' proposal [is] unrealistic in terms of the actual costs
3 expended by the government in defending litigation." <u>Id.</u> at 227.
4 In particular, "[u]nder th[at] . . . formula, the government does
5 not recoup its true costs of litigation which, like private
6 counsel, include secretarial and support staff expenses, supplies,
7 materials, travel, phone calls, etc." <u>Id.</u>; <u>see also</u> <u>NLRB v. Local</u>
8 <u>3, Intern. Broth. Of Elec. Workers</u>, 471 F.3d 399, 407 (2nd Cir.
9 2006) ("[B]ecause government attorneys receive a fixed salary and
10 do not bill a client for their services, a proportionate share of
11 attorneys' salaries does not necessarily correlate to expenses
12 actually incurred in pursuing a given case.").  Indeed, in the
13 present case, the United States is quick to point out that, among
14 other things, it is not seeking "compensat[ion] for every cost it
15 incurred in pursuing these contempt proceedings[.]" Reply (doc. 54)
16 at 3, n. 2.  In any event, the fact "that pursuing a contempt
17 action imposes additional costs on the government in the form of
18 foregone opportunities to pursue other cases according to its
19 statutory  duty[,]" is another compelling reason for not adopting
20 the grade level hourly rate here.  <u>See</u> <u>NLRB</u>, 471 F.3d at 407.

21     Instead of applying attorney Maragani's "grade level" hourly
22 rate, the court will apply the EAJA hourly rate, adjusted for
23 inflation, as the United States urges.  <u>See</u> <u>U.S. v. City of</u>
24 <u>Jackson, Miss.</u>, 359 F.3d 727, 734 (5th Cir. 2004) (in contempt
25 proceeding, EAJA hourly rate of $125 was reasonable for government
26 attorneys).  As noted above though, the court disagrees with the
27 United States' calculation of that rate.  Pursuant to the EAJA,
28 "unless the court determines that an increase in the cost of living

- 10 -

1  . . . , justifies a higher fee[,]" the maximum hourly rate under
2  that statute is $125.00.  28 U.S.C. § 2413(d)(2)(A) (West 2006).
3  To compute the hourly rate under the EAJA, adjusted for cost-of-
4  living ("COLA") increases, the court applies the formula enunciated
5  in Thangaraja v. Gonzales,428 F.3d 870, 876-77 (9th Cir. 2005).
6  See Ninth Circuit Rule 39-1.6, Advisory Committee Note thereto.
7  "Appropriate [COLA] increases are calculated by multiplying the
8  $125 statutory rate by the annual average consumer price index
9  figure for all urban consumers ("CPI-U") for the years in which
10 counsel's work was performed, and then dividing by the CPI-U figure
11 for March 1996, the effective date of EAJA's $125 statutory rate."
12 Thangaraja, 428 F.3d at 876-77 (citation omitted).

13      Attorney Maragani performed legal services in 2007 and 2008,
14 but he did not differentiate between those years in requesting a
15 COLA.  Therefore, as the United States requests, the court will
16 award attorney's fees at the 2007 rate only.[1]  The hourly rate for
17 2007 is not $169.95 as the United States indicates, however.  See
18 Maragani Decl'n (doc. 49) at 3, ¶ 4(a).  Rather, under the
19 Thangaraja formula, the 2007 EAJA hourly rate adjusted for
20 inflation is $166.46 ($125 x 207.342 (the average annual CPI-U for
21 2007[2])/155.7).  Based upon that rate, the court finds that the

---

[1] A fee request at the 2008 hourly rate would have meant $220.45 more in fees being awarded herein.  That amount represents the difference between the 2007 and 2008 hourly rates for the 34.5 hours of services rendered in 2998.  The 2008 hourly rate,, adjusted for inflation, is $172.85 ($125 x 215.303 (the average annual CPI-U for 2008 according to the U.S. Dept. Of Lab., Bureau of Lab. Statistics, *Consumer Price Index: All Urban Customers*, ftp:/bls.gov/pub/special.requests/cpi/cpiai.txt)/155.7).  So, if the United States had sought fees at the 2008 hourly rate, then it would have been awarded $5,963.32 for services performed in that year.  Instead, it is being awarded fees of $5,742.87 which is based upon 2007 hourly rates, regardless of in which year those services were rendered.

[2] See U.S. Dept. Of Lab., Bureau of Lab. Statistics, *Consumer Price Index: All Urban Customers*, ftp:/bls.gov/pub/special.requests/cpi/cpiai.txt.

- 11 -

United States is entitled to $7241.01 for the 43.5 hours of legal services it rendered in connection with this contempt matter.

***II. Costs***

The United States also is seeking $1,665.69 in travel costs. Those costs are detailed in the supporting declaration of attorney Maragani and copies of his travel receipts included therewith. See Maragani Decl'n (doc. 49), and exh. A thereto. The United States incurred those costs in connection with attorney Maragani's travel from Washington, D.C. to Phoenix, Arizona, for the January 8, 2008, contempt hearing. Originally that hearing was scheduled for October 15, 2007, and Mr. Maragani also flew to Phoenix to attend that hearing. Reply (doc. 54) at 3 n.2. However, the hearing was postponed because respondent's attorney had been in an accident. Id. The United States did not object to that postponement, even though respondent's attorney had co-counsel who arguably could have appeared on the originally scheduled date. Id. In any event, the United States is not seeking costs incurred with Mr. Maragani's first trip to Phoenix. Id.

Having reviewed attorney Maragani's declaration as to costs and his supporting documentation, the court finds that such costs are reasonable, and again notes that if the court grants this motion, respondent has no objection to the cost aspect. In finding these costs reasonable, the court is taking into account that the United States is not seeking costs associated with the postponed contempt hearing. Accordingly, the court GRANTS the United States' motion insofar as it is seeking costs in the amount of $1,665.69 incurred in connection with the United States' contempt motion.

To conclude, for the reasons set forth herein, IT IS ORDERED

1  that the "United States' Motion for Compensatory Sanctions" (doc.
2  48) is GRANTED;
3       IT IS FURTHER ORDERED that within thirty (30) days of the
4  filing of this Order, respondent, William R. Fitzpatrick, Jr.,
5  shall make payment to the United States a total of $8,906.70, which
6  represents $7,241.01 in attorney's fees and $1,665.69 in costs; and
7       IT IS FINALLY ORDERED that the court shall retain
8  jurisdiction over this matter for the purpose of ensuring that
9  respondent has fully complied with this order.
10      DATED this 26th day of February, 2009.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record